IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

JOSHUA M. STOCKTON                                                                                      PLAINTIFF

v.                                            4:24-cv-00840-JM-JJV

MARSHALL REED, Chief Deputy Director,
Non-Medical Grievance Appeals, ADC, *et. al*                                          DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody Jr.   Any party may serve and file written objections to this Recommendation.   Objections should be specific and include the factual or legal basis for the objection.   If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.   Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation.   Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.     DISCUSSION**

Joshua M. Stockton (Plaintiff), who is no longer in custody, has filed this *pro se* action pursuant to 42 U.S.C. § 1983.   Plaintiff says that, while he was in the Ester and Wrightsville Units of the Arkansas Division of Correction (ADC): (1) Deputy Warden Emmer Branch and Corporal Charlene Clay forced him to perform job duties that exceeded his medical restrictions; and (2) Sergeant Johnathan Evans, Sergeant Deitrich Jones, ADC Chief Deputy Marshall Reed, Grievance Supervisor Terri Grigsby-Brown, Assistant Medical Grievance Coordinator Deshona Collins, and Inmate Grievance Coordinator Sandra Redwood failed to take corrective action after learning

1

about the matter.[1]  (Doc. 2.)  All other claims and Defendants have been previously dismissed without prejudice.  (Docs. 6, 42, 43, 45.)  Plaintiff is pursuing these claims against Defendants in the personal capacities only, and monetary damages are the only relief sought.  (Doc. 2.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to qualified immunity.  (Docs. 60-62.)  Plaintiff has filed a Response.  (Docs. 66-67.)  And Defendants have filed a Reply.  (Doc. 81.)  After careful consideration and for the following reasons, I recommend the Motion be GRANTED, Plaintiff's job assignment claim be DISMISSED with prejudice, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).  The moving party bears the initial burden of

---

[1] In their Motion for Summary Judgment and Reply (Docs. 60, 61, 81), all eight remaining Defendants incorrectly say the claim against them has been limited to August 21 to September 5, 2024, based on this Court's prior ruling on their Motion for Partial Summary Judgment on the issue of exhaustion.  (Docs. 23, 34, 43.)  However, exhaustion is an affirmative defense that must be pled and proved by the defendants.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Porter v. Sturm*, 781 F.3d 448, 451 (8th Cir. 2015).  In the Motion for Partial Summary Judgment, only five of the remaining Defendants (Redwood, Grigsby-Brown, Collins, Branch, and Jones) sought dismissal based on exhaustion while the other three Defendants (Reed, Clay, and Evans) did not do so. (Doc. 23 at ¶ 5; Doc. 24.)  Thus, the Court's limitation of Plaintiff's job assignment claim from August 21 to September 5, 2024, only applies to Defendants Redwood, Grigsby-Brown, Collins, Branch, and Jones.  (Docs. 34, 43.)  In contrast, there has been no limitation, based on the exhaustion defense, as to Plaintiff's job assignment claim against Defendants Clay, Evans, or Reed. Defendants also ask the Court to reconsider a portion of its exhaustion ruling based on a new argument not previously raised. (Doc. 62.) At this point, there is no need for the Court to do so or to split hairs as to the time limitations that apply to the job assignment claims remaining against each of the eight Defendants because, as will be discussed herein, there is no evidence demonstrating any of the Defendants were deliberately indifferent regarding Plaintiff's job assignments for the entire relevant period, which is from his arrival at the Ester Unit on July 20, 2023 until he filed this lawsuit on October 4, 2024.

demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III. FACTS

Unless otherwise indicated, the following facts are undisputed. On July 5, 2023, a non-party APRN, who had previously treated Plaintiff on several occasions, gave him an "M2-Avg.-Good Physical Condition" medical classification.[2] (Docs. 60-6, 60-7, 60-8.) Plaintiff's Health Classification and Restrictions form said Plaintiff had "Normal Physical Stamina" with "Slightly Limited Mobility" in his upper and lower extremities. (Doc. 60-6.) It also said:

> Restrict from assignment requiring prolonged crawling, stooping, running, jumping, walking or standing in excess of <u>0 hours</u> per day. Allow 10 minute break after each hour.
>
> Restrict from assignment requiring strenuous physical activity in excess of <u>0 hours</u> per day. Allow 10 minute break after each hour.
>
> Restrict from assignment requiring lifting of heavy materials in excess of 0 lbs.; and/or overhead work in excess of <u>0 hours per day</u>. Allow 10 minute break after each hour.

---

[2] In her sworn declaration, the APRN explains she imposed those limited restrictions because Plaintiff had previously complained of chronic hip pain from a motorcycle accident prior to his incarceration, which was treated with Naproxen, and an x-ray showed a history of moderate degenerative disc disease in his lower thoracic spine that is commonly seen in people as they age. Nevertheless, Plaintiff demonstrated a full range of motion in his lumbar region, without muscle spasms or motor deficits. (Doc. 60-7.)

3

(*Id*. at 1) (emphasis added.)  Based on the emphasized language, Plaintiff believed he was medically restricted from performing any type of work.  (Doc. 60-1 at 34-40.)  However, the APRN who issued those restrictions and the Medical Director at the Wrightsville Unit explain in their sworn declarations that the "0 hours per day" language "prevented Mr. Stockton from being assigned to a job with those requirements without any breaks after 59 continuous minutes of work."  (Doc. 60-7 at 3; Doc. 60-8 at 4.)  In other words, Plaintiff could perform the mentioned activities for up to 59 continuous minutes before needing a 10 minute break.  (*Id*.; Doc. 81-1 at 3.)

On July 20, 2023, Plaintiff arrived at the Ester Unit after being transferred from another ADC facility.  (Doc. 60-3 at 2; Doc. 60-4.)  On August 1, 2023, the Ester Unit Classification Committee, including Assistant Warden Branch, assigned Plaintiff to the job of barrack porter, which was the least strenuous job at the Unit.  (Doc. 60-1 at 42-43; Doc. 60-4 at 3; Doc. 60-10.)  Importantly, a non-party medical representative on the Classification Committee agreed to the assignment.  (*Id.*)  As a barrack porter, Plaintiff was required to sweep, mop, clean showers, and pick up trash.  (Doc. 60-4 at 3; Doc. 66 at 3.)  And, he was allowed to take breaks whenever he needed.  (Doc. 60-1 at 46; Doc. 60-2 at 3.)  Sometime during the next five months, Plaintiff told Corporal Clay, who was his supervisor, that the job assignment, particularly cleaning the showers, was causing him pain.  (Doc. 60-1 at 27-28, 44-46.)  And he raised the same concerns in grievances that were reviewed by Sergeants Evans, Jones, and Reed.  (*Id.* at 25-27.)  Plaintiff was instructed to see the medical department, which periodically gave him three-day work releases.  (*Id.* at 48-49.)  But the medical providers did <u>not</u> change Plaintiff's M2 medical classification or work restrictions.  (*Id.* at 48-49; Doc. 67 at 53.)  And it is undisputed Plaintiff was never disciplined for failing to complete his job tasks or taking too many or ill-timed breaks.  (Doc. 60-1 at 44-46, 65.)

On January 12, 2024, Plaintiff was transferred to the Wrightsville Unit, where non-parties assigned him to the job of laundry picket man, which was consistent with his M2 medical classification. (Doc. 60-1 at 4; Doc. 60-2; Doc. 60-3 at 1; Doc. 60-8 at 4.) Although it is unclear, it appears Plaintiff is saying some of the Defendants denied his grievances and appeals about his job assignments while he was there. (Doc. 2; Doc. 60-1 at 56-60). On October 4, 2024, Plaintiff filed this lawsuit. (Doc. 2.) And, sometime in September 2025, he was released from custody. (Doc. 71.)

## IV.   DISCUSSION

Defendants argue they are entitled to dismissal with prejudice based on the doctrine of qualified immunity. "Qualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014). Defendants are entitled to qualified immunity unless: "(1) 'the facts shown by the plaintiff make out a violation of a constitutional or statutory right,' and (2) the 'right was clearly established at the time of the defendant's alleged misconduct.'" *Jones v. Faulkner Cnty., Ark.*, 131 F.4th 869, 874 (8th Cir. 2025) (quoting *Thompson v. Dill,* 930 F.3d 1008, 1012 (8th Cir. 2019)). If there is no evidence of a constitutional violation, as in this case, then the analysis ends, and the defendants are entitled to dismissal. *See Jones,* 131 F.4th at 874; *Smith-Dandridge v. Geanolous*, 97 F.4th 569, 575 (8th Cir. 2024).

Under the Eighth Amendment, prison officials cannot "knowingly compel an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoting *Ambrose v. Young,* 474 F.3d 1070, 1075 (8th Cir. 2007)). To defeat qualified immunity and proceed to trial on that claim,

Plaintiff must have evidence that: (1) objectively, his job assignments created a substantial risk of serious harm to his health or safety; and (2) subjectively, Defendants actually knew of, but disregarded, that substantial risk. *See Joseph v. Wheeler*, 144 F.4th 1111, 1114 (8th Cir. 2025); *Kulkay,* 847 F.3d at 643-43. Importantly, deliberate indifference is a stringent standard of fault that is much higher than negligence or gross negligence. *Joseph*, 144 F.4th at 114; *Doe v. Flaherty*, 623 F.3d 577, 584 (8th Cir. 2010). It requires "proof of a reckless disregard of the known risk." *Scott v. Baldwin*, 720 F.3d 1034, 1036 (8th Cir. 2013).

The APRN who imposed Plaintiff's restrictions as well as the Medical Director at the Wrightsville Unit say in their sworn declarations that Plaintiff's medical restrictions were appropriate based on his medical records and physical examinations and that Plaintiff's job assignments at the Ester and Wrightsville Units during the relevant time period did not violate those restrictions.³ (Doc. 60-7; Doc. 60-8.) Plaintiff takes issue with those conclusions based on his interpretation of his medical records. (Doc. 66; Doc. 67.) Nevertheless, that dispute is irrelevant because Plaintiff has not sued any of the medical providers who imposed or allegedly failed to change his medical restrictions.

Instead, he has sued a variety of non-medical prison personnel who, it is undisputed, had no authority to impose or change Plaintiff's medical classification and work restrictions at the Ester and Wrightsville Units. (Docs. 60-2; Doc. 60-4; Doc. 81-1.) And Plaintiff has not come forward with any evidence suggesting Defendants were deliberately indifferent when they

---

³ Sometime in 2025, which was after the relevant time period in this lawsuit, the Wrightsville Unit Medical Director changed Plaintiff's medical classification to "medically unassigned," which released him from all work duties. (Doc. 60-1 at 34, Doc. 60-8;.) However, the Medical Director explains in his declaration that he made that change - despite Plaintiff being physically able "perform ordinary work assignments" - to stop him from "divert[ing] critical time and resources" with frequent "visits, demands, and threats." (Doc. 60-8 at 5.)

complied with the work classifications and limited restrictions imposed by medical personnel. *See Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042-43 (8th Cir. 2006) (no deliberate indifference when prison supervisors, who lacked medical expertise, relied on the decisions made by medically treated personnel); *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002) (same); *Pitts v. Carrol,* Case No. 99-2695, 2000 WL 276973 (8th Cir. March 15, 2000) (no deliberate indifference when prisoner a administrators assigned a prisoner with high blood pressure to the hoe squad after prison medical personnel classified the prisoner as M-2, without any work restrictions); *Moore v. Moore*, Case No. 03-2419, 2004 WL 1918766 (8th Cir. Aug. 27, 2004) (no deliberate indifference when prison administrators relied on the medical personnel's decision that a prisoner with advanced osteoarthritis in his back could work on the yard crew).  Accordingly I conclude Defendants are entitled to qualified immunity and dismissal with prejudice on the remaining job assignment claim against them.

V.     **CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that:

1.     Defendants' Motion for Summary Judgment (Doc. 60) be GRANTED.

2.     Plaintiff's job assignment claim against Defendants Reed, Evans, Jones, Clay, Branch, Grigsby-Brown, Collins, and Redwood be DISMISSED with prejudice.

3.     This case be CLOSED.

4.     The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not be taken in good faith.

DATED this 10th day of October 2025.

                                                                        _____
                                                                         JOE J. VOLPE
                                                                         UNITED STATES MAGISTRATE JUDGE